IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JIMMY FRANK CAMERON, #105591<br><br>    Plaintiff,<br><br>vs.<br><br>RICHARD ALLEN, and CORRECTIONAL MEDICAL SERVICE,<br><br>    Defendants. | CASE NO. 2:10-CV-00842-TMH<br>[WO] |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

In this 42 U.S.C. § 1983 action, Jimmy Frank Cameron ["Cameron"], a former state inmate, challenges the medical treatment provided to him for his shoulder during his incarceration at Draper Correctional Facility and Bibb Correctional Facility.[1] *Amended Complaint - Doc. No. 4* at 2-4. The defendants are identified as Richard Allen ["Allen"] and Correctional Medical Services ["CMS"], the health care provider for the state prison system. *Id.* at 1. Cameron seeks damages and injunctive relief. *Id.* at 4.

The defendants filed answer, special reports and supplemental special reports, as well

---

[1]The Court limited the claims in this case to those raised in Cameron's Amended Complaint. *Order of Oct. 27, 2010 - Doc. 8.* Although Cameron subsequently attempted to add claims in addition to those made in his amended complaint, the Court denied these motions to amend. Consequently, the claims pending in this case are limited to those raised in the October 19, 2010 Amended Complaint. *Amended Complaint - Doc. 4.*

as supporting evidentiary materials, including affidavits and medical records, addressing Cameron's claims for relief.  In these documents, the defendants deny Cameron's allegations that they violated his constitutional rights.  Defendant Allen argues he is entitled to immunity and that Cameron's suit also must be dismissed because he suffered no physical injury.  *See* 42 U.S.C. § 1997e(e).   Defendant CMS asserts that it cannot be held liable on the basis of *respondeat superior*, and the complaint is due to be dismissed because Cameron failed to properly exhaust an administrative remedy available to him at Bibb Correctional Facility with respect to the claims presented in this cause of action.  *See* 42 U.S.C. § 1997e(a) (requiring exhaustion of available administrative remedies before filing suit).  Cameron filed numerous responses to these arguments set forth by the defendants.  *Pl.'s Resp. - Doc. Nos. 19, 23, 31, 32, 33, 61, 68.*

Pursuant to the orders entered in this case and governing case law, the court deems it appropriate to treat the defendants' reports as motions for summary judgment.  *Order of Jan. 19, 2011 - Doc. No. 22; Order of Feb. 14, 2011 - Doc. No. 28.*  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of these motions and the evidentiary materials filed in support thereof, the court concludes that the motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former Fed. R. Civ. P. 56 omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.

---

[2]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id.* "'Shall' is also restored to express the direction to grant summary judgment." *Id.* Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing the prior versions of the rule remain equally applicable to the current rule.

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324;

Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact [by citing to materials in the record

including affidavits, relevant documents or other materials] the court may . . . grant summary

judgment if the motion and supporting materials -- including the facts considered undisputed

-- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the

nonmoving party produces evidence that would allow a reasonable fact-finder to return a

verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of
> professional judgment.  In respect to the latter, our inferences must accord
> deference to the views of prison authorities....  Unless a prisoner can point to
> sufficient evidence regarding such issues of judgment to allow him to prevail
> on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  Consequently, to

survive the defendants' properly supported motions for summary judgment, Cameron is

required to produce "sufficient [favorable] evidence" which would be admissible at trial

supporting his claims.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R.

Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable .

. . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477

U.S. at 249-50.  "A mere 'scintilla' of evidence supporting the opposing party's position will

not suffice; there must be enough of a showing that the [trier of fact] could reasonably find

for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (per curiam) (plaintiff's "conclusory assertions . . . , in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose a motion for summary judgment. . . ."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami,*

*Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-24 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

6

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Cameron fails to demonstrate a requisite genuine dispute of material so as to preclude summary judgment. *Matsushita*, *supra*.

### III. DISCUSSION

**A. Suit Against the Defendants in Their Official Capacities - Absolute Immunity**

To the extent Cameron sues the defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official

capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, it is clear that the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B. Commissioner Allen

Cameron alleges that defendant Allen, the Commissioner of the Alabama Department of Corrections, failed to intervene regarding the medical treatment provided to Cameron by health care professionals.  Specifically, Cameron argues that failed to ensure that Cameron receive an orthopedic consultation for his shoulder. *Complaint - Doc. No. 1* at 4.  The claim made against defendant Allen entitles Cameron to no relief as

> [t]he law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong.  *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3rd Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.*, 198 Fed.Appx. 893, 897 (11[th]  Cir. 2006).

*Cameron v. Allen, et al.*, 525 F. Supp.2d 1302, 1307 (M.D. Ala. 2007).

To the extent Cameron seeks relief from defendant Allen for the treatment provided

by prison medical personnel due to his position as Commissioner of the ADOC, assuming *arguendo* Allen exerted some authority over the manner in which those persons responsible for the provision of medical treatment rendered such treatment, the law is well settled "that Government officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior* [or vicarious liability]. . . . *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ('A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties').  Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."); *Marsh v. Butler County*, 268 F.3d 1014, 1035 (11th Cir. 2001) (A supervisory official "can have no respondeat superior liability for a section 1983 claim."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (supervisory officials are not liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat*

9

*superior* or vicarious liability.).  "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Iqbal*, 556 U.S. at 677.  Thus, liability for medical treatment provided to Cameron could attach to defendant Allen only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation." *Cottone*, 326 F.3d at 1360.

Cameron, however, has presented no evidence, nor can the court countenance the existence of any evidence, which would create a genuine issue of disputed fact with respect to the claim of deliberate indifference lodged against defendant Allen.  Cameron insists that he sent Allen a letter, but Allen avers that he does not know Cameron, and he does not "recall talking to him and/or receiving any correspondence from him.  Since [Allen] has been Commissioner, it has been [his] policy to forward all medical complaints to the Associate Commissioner of Health Services for ADOC."  *Allen Aff. - Doc. 21-3* at 2.  Cameron provides no evidence that Allen received any communication regarding Cameron's medical treatment.  The record is devoid of evidence indicating that Allen personally participated in or had any involvement, direct or otherwise, with the medical treatment provided to Cameron during his confinement in the Alabama Department of Corrections.  Rather, it is undisputed that Allen did not participate in the provision of treatment to Cameron.  The evidentiary materials before the court demonstrate that medical personnel made all decisions relative to the course of treatment provided to Cameron and that they provided treatment to Cameron

in accordance with their professional judgment upon assessment of his condition.

In light of the foregoing, defendant Allen can be held liable for decisions of medical personnel only if his actions bear a causal relationship to the purported violation of Cameron's constitutional rights. To establish the requisite causal connection and therefore avoid entry of summary judgment in favor of defendant Allen, Cameron must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [the defendant] on notice of the need to correct the alleged deprivation, and [he] fail[ed] to do so. . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or . . . facts [that] support an inference that [Allen] directed the [facility's health care staff] to act unlawfully, or knew that [the staff] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted in this case demonstrates that Cameron has failed to meet this burden.

The record before the court contains no probative evidence to support an inference that Allen directed medical personnel to act unlawfully or knew that they would act/acted unlawfully and failed to stop such action. In addition, Cameron has presented no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Allen failed to take corrective action; instead, the undisputed medical records indicate that Cameron had continuous access to medical personnel and received treatment for his condition. Finally, the undisputed evidentiary materials submitted demonstrate that the challenged course of medical

11

treatment did not occur pursuant to a policy enacted by Allen.  Thus, the requisite causal connection does not exist in this case and liability under the custom or policy standard is not warranted.  Summary judgment is therefore due to be granted in favor of defendant Allen.

### C.  Defendant Correctional Medical Services

Cameron asserts that in January of 2009, Dr. Corbier ordered an orthopedic consultation for Cameron during his confinement at Draper Correctional Facility but CMS refused to allow the consultation.  Cameron further asserts that on June 1, 2009, at Bibb Correctional Facility, Dr. Whitley ordered an orthopedic consultation but CMS denied this order to save costs.  Cameron points to a statement by Brandon Kinard, R.N., Regional Clinical Manager of the Alabama Department of Corrections, in which Kinard states, "Patient was ordered an orthopaedic consult for his right shoulder on 6/1/09 by Dr. Whitley, Medical Director at Bibb Correctional."  *Kinard Aff. - Doc. 21-2* at 2.  Defendant CMS adamantly denies that it acted with deliberate indifference to Cameron's medical need.  Instead, CMS maintains that Cameron received all necessary and appropriate treatment for his shoulder, that Cameron's condition did not require evaluation by a free-world orthopedic specialist, and that he was not referred to an outside orthopedic specialist for treatment but merely received a referral for further internal consultation among CMS physicians.

To prevail on a claim concerning an alleged denial of adequate medical treatment, an inmate must, at a minimum, show that a defendant acted with deliberate indifference to the inmate's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Taylor v.*

*Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Specifically, medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (citation and internal quotations omitted) (As directed by *Estelle*, a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment.").

> That medical malpractice-negligence by a physician-is insufficient to form the basis of a claim for deliberate indifference is well settled. *See Estelle v. Gamble,* 429 U.S. 97, 105-07 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison physician's harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833-38 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir.1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. Dekalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n.28 (11th Cir.1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

13

In order to properly establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009).  When seeking relief based on deliberate indifference, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291;

14

> *Mandel [v. Doe],* 888 F.2d [783,] 787 [11ᵗʰ Cir. 1989]. Medical treatment
> violates the eighth amendment only when it is "so grossly incompetent,
> inadequate, or excessive as to shock the conscience or to be intolerable to
> fundamental fairness." *Rogers,* 792 F.2d at 1058 (citation omitted). Mere
> incidents of negligence or malpractice do not rise to the level of constitutional
> violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ("Medical malpractice
> does not become a constitutional violation merely because the victim is a
> prisoner."); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical
> malpractice "not sufficient" to constitute deliberate indifference); *Waldrop,*
> 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate
> indifference). Nor does a simple difference in medical opinion between the
> prison's medical staff and the inmate as to the latter's diagnosis or course of
> treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871
> F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4ᵗʰ Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11ᵗʰ Cir. 1991) (alterations added); *Taylor*, 221 F.3d

at 1258 (citation and internal quotations omitted) (To show deliberate indifference to a

serious medical need, a plaintiff must demonstrate that the defendants' response to the need

was more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even

medical malpractice actionable under state law."). Moreover, "as *Estelle* teaches, the

question of whether government actors should have employed additional diagnostic

techniques or forms of treatment 'is a classic example of a matter for medical judgment' and

therefore not an appropriate basis for grounding liability under the Eighth Amendment."

*Adams*, 61 F.3d at 1545; *Garvin v. Armstrong*, 236 F.3d 896, 898 (7ᵗʰ Cir. 2001) ("A

difference of opinion as to how a condition should be treated does not give rise to a

constitutional violation."); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11ᵗʰ Cir. 1985)

(mere fact inmate desires a different mode of medical treatment does not amount to

deliberate indifference violative of the Constitution); *Franklin v. Oregon*, 662 F.2d 1337,

15

1344 (9th Cir. 1981) (prison medical personnel do not violate the Eighth Amendment simply because their opinions concerning medical treatment conflict with that of the inmate-patient). Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records. *See Bennett v. Parker*, 898 F.2d 1530, 1534 (11th Cir. 1990).

The affidavits filed by the medical defendant address the allegations made by Cameron. A thorough review of the evidentiary materials filed in this case demonstrates that these affidavits are corroborated by the objective medical records compiled contemporaneously with treatment provided to Cameron regarding the instant claim of deliberate indifference. Dr. Whitley, the Medical Director at Bibb Correctional Facility, explained the extent of the care provided to Cameron, not just for his shoulder, but also for other chronic ailments, and Cameron qualified for regular evaluation of his chronic conditions, which the staff calls "chronic care clinics." *Whitley Aff. ¶ 14 - Doc. 16-1.* As set forth in Dr. Whitley's supplemental affidavit, Cameron's shoulder pain initially was addressed at Kilby Correctional Facility and Draper Correctional Facility in 2008. *Whitley Supp. Aff. ¶¶ 4- 5 - Doc. 27-1.* Cameron had been diagnosed with degenerative joint disease as of December 22, 2008. *Id. ¶ 5.* Dr. Whitley explained:

> Degenerative joint disease is a progressive deterioration of the tissue at the various joints which can cause discomfort and/or stiffness at the joints and may be worsened through repetitive movement or a sedative lifestyle. It is most commonly treated through medication and avoidance of a sedentary lifestyle. Moreover, there are no surgical procedures to alleviate this condition; however, in very rare instances, some symptoms can be alleviated

16

through surgery.  As noted in the December 22, 2008, x-ray results, Mr.
Cameron does have some deformity in his shoulder, which Dr. Corbier noted
was the result of a prior motor vehicle accident (CMS070).

*Id.*  On January 13, 2009, Dr. Corbier evaluated Cameron's complaint of shoulder pain at

Draper Correctional Facility, and the pain was intermittent and of an unknown origin.  *Id.¶*

*6.*  Dr. Corbier prescribed Cameron pain medication and a ninety-day restriction on heavy

lifting or repeated use of his right arm and shoulder.  *Id.*  The medical records do not indicate

that Dr. Corbier referred Cameron to an orthopedic specialist.  *Def.'s Ex. A - Doc. 16-4* at 42.

Cameron was transferred from Draper to Bibb Correctional Facility on March 5, 2009.

*Def.'s Ex. A - Doc. 16-2* at 13.

On June 1, 2009, Dr. Whitley saw Cameron for complaints of shoulder pain.  *Whitley*

*Aff ¶ 8 - Doc. 27-1.*  Dr. Whitley describes his treatment of Cameron's shoulder pain, in

pertinent part, as follows:

> 8.  I conducted an extensive physical evaluation of Mr. Cameron on
> June 1, 2009, who again voiced complaints of shoulder pain.  (CMS239).
> However, when I evaluated Mr. Cameron's shoulder, I could not identify any
> objective signs of any swelling, injury, dysfunction, trauma or deformity which
> could possibly result in the type of pain being described by Mr. Cameron.  It
> was clear during the course of this consultation that Mr. Cameron simply
> would not cooperate with any course of medication prescribed for him to
> alleviate his discomfort.  (CMS239).
>
> 9.  As stated in my original Affidavit, I consulted with CMS's associate
> regional medical director in June of 2009 related to the continued complaints
> of pain from Mr. Cameron related to his right shoulder. (CMS133). Consistent
> with my standard practice, I completed the "Consultation Request" form
> proposing that we consider an orthopedic consultation for Mr. Cameron's
> complaints of shoulder pain.  (CMS 133).  During this timeframe, I discussed
> Mr. Cameron's condition with Dr. Hood.  Our discussion did not involve the

17

cost of any medical treatment.  In fact, our discussion focused entirely upon the most effective manner of treating Mr. Cameron.  Dr. Hood and I agreed that the prospects for any benefits from surgical intervention with respect to Mr. Cameron's shoulder were limited given his chronic condition.  As noted on the Consultation Report, I requested the input from CMS's Regional Medical staff, including Dr. Hugh Hood (CMS's Associate Regional Medical Director), related to our efforts to treat Mr. Cameron's complaints in light of the limited options for pain medication given Mr. Cameron's gastrointestinal issues. (CMS133).  As a result of that consultation with additional physicians (including, Dr. Hood), we elected to pursue a course of steroid injections into Mr. Cameron's right shoulder to attempt to alleviate his discomfort. (CMS133).  Dr. Hood and I agreed that, if we could manage his condition though [sic] medication, it could potentially provide the greatest long-term benefit for Mr. Cameron.  In short, Mr. Cameron's allegation that I "ordered" him to be seen by an orthopedic surgeon or that the decision to forego a consultation at that time are simply false.

*Id.* ¶¶ *8-9.*  Cameron subsequently made other visits to the medical staff at Bibb, and his complaints were addressed. *Id.* ¶¶ *10-13.*  On August 17, 2010, Cameron underwent x-rays of his back and shoulders, which continued to show degenerative joint disease. *Id.* ¶ *14.*  To the extent Cameron insists he has a bone protruding from his shoulder, the x-ray indicated "the absence of any 'recent fracture or dislocation.' (CMS065)." *Id.*  Dr. Whitley further stated:

15.  Likewise, we have provided a significant and more than adequate degree of care for Mr. Cameron's complaints of shoulder pain.  When Mr. Cameron voiced complaints related to pain or discomfort in his arms and shoulders, I prescribed various medications in order to control his discomfort including Tylenol and Motrin.  (CMS184, 187, 189, 191).  At this point in time, Mr. Cameron's pain could be alleviated to a degree by [adjusting] his level of activity, but also [by Cameron] stopping smoking [as smoking] decreases the effectiveness of the pain medications prescribed by me for this condition.  While we cannot "cure" Mr. Cameron's degenerative joint disease, we have taken appropriate and adequate measures to address his complaints.

18

16.   In his response, Mr. Cameron also states that he "refuses to take any pills that would harm [his] liver." This statement is wholly consistent with Mr. Cameron's refusal to appear at the pill call at the designated times to receive medication which was administered to him previously through the pill call process at Draper. (CMS225).   For example, Mr. Cameron received a prescription for the muscle relaxant medication Robaxin to be taken twice daily in April 2009 for his shoulder. (CMS231).   Mr. Cameron failed to appear at pill call to receive this medication during the entire month of April, despite the fact that this medication should not have any impacts upon his liver function. (CMS231).   Indeed, it is difficult to treat a patient who refuses to take the medications prescribed for him.   Given Mr. Cameron's unwillingness or inability to report to the pill call window in a timely fashion to receive the medications prescribed by me, I eventually directed the medical staff to begin providing Mr. Cameron with his medications via the keep-on-person protocol, which allows Mr. Cameron to maintain his medication "on his person" and administer his medication at his own direction. (CMS203-218).   Therefore, Mr. Cameron has apparently "refused" to take the medication provided to him to alleviate his symptoms.   Mr. Cameron's medication administration records also demonstrate that he received all of the medication which was prescribed by me and was left to independently determine his own compliance with the prescriptions I provided.

17.   In summary, I do not believe there is any basis of any kind for the allegations asserted in Mr. Cameron's recent Response.   While Mr. Cameron may believe he should receive an orthopedic consultation, I have not identified any objective medical evidence that he would benefit in any way from this type of consultation.   In fact, his complaints of shoulder pain have been infrequent and inconsistent.   For example, after I discussed his case with Dr. Hood in June of 2009, Mr. Cameron did not voice any complaints of shoulder pain until February of 2010, i.e. roughly seven (7) months.   Moreover, Mr. Cameron admits in his Response his unwillingness to cooperate in the treatment of his condition, given his refusal to take pain medications.   This refusal has persisted since he was first seen related to complaints in November of 2008. If Mr. Cameron wishes to alleviate the pain and discomfort with his shoulder, the first step would necessarily constitute his cooperation with the medication therapies prescribed for him. . . .

Id. ¶¶ 15-17.   The medical records corroborate Dr. Whitley's statements.

Under the circumstances of this case, the court concludes that the course of treatment

undertaken by the medical defendants in addressing Cameron's complaints regarding his shoulder condition did not violate his constitutional rights.   Contrary to Cameron's interpretation, the "Consultation Request" by Dr. Whitley did not constitute referral to a free-world specialist; rather, it was merely the initial step in determining whether Cameron's condition warranted referral  to an outside orthopedic specialist for evaluation.   The undisputed medical records further demonstrate that correctional medical personnel examined Cameron when he submitted a sick call request regarding his shoulder, he was seen regularly for chronic health issues, he was prescribed various medications and steroid injections in an effort to alleviate pain associated with his shoulder condition, he was ordered radiological tests, doctors conferred to determine whether he would benefit from referral to an orthopedic specialist, and he was provided continuous access to health care providers in an effort to monitor his condition.   Based on their evaluation of Cameron's condition, the attending physicians, in accordance with their medical experience and professional judgment, did not deem it necessary to order an orthopedic evaluation of his shoulder.   The medical care Cameron received was certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris*, 941 F.2d at 1505 (quotation marks and citation omitted).   The allegations presented by Cameron simply fail to establish deliberate indifference by the medical professionals who attended to him. *Garvin*, 236 F.3d at 898 (difference of opinion regarding manner in which condition should be treated fails to demonstrate a constitutional violation); *Adams*, 61 F.3d at 1545-46

20

(Whether medical personnel "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis" on which to ground constitutional liability.  In addition, the inmate's allegation that his prison physician did not diligently pursue alternative means of treating condition "did not 'rise beyond negligence'. . . to the level of deliberate indifference."); *Hamm*, 774 F.2d at 1575 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

It is undisputed that Cameron received continuous medical care for his condition.  It is likewise evident that Dr. Corbier and Dr. Whitley rendered treatment to Cameron in accordance with their professional judgment.  Although Cameron argues he should have been referred for an orthopedic consultation, well settled law directs that Cameron's mere desire for use of an  "additional diagnostic technique[] . . . 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545.  In addition, Cameron has failed to present any evidence which indicates that the medical officials knew that the manner in which they provided treatment created a substantial risk to Cameron's health and that with this knowledge consciously disregarded such risk.  The record is therefore devoid of evidence, significantly probative or otherwise, showing that medical officials acted with deliberate

21

indifference to Cameron's medical needs.  Consequently, summary judgment is due to be granted in favor of Correctional Medical Services.[3]  *Taylor*, 221 F.3d at 1258.

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be dismissed with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before September 6, 2013 the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v.*

---

[3]Because the court disposes of plaintiff's claims on these grounds, the court does not address defendant's other grounds for summary judgment.

*Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 19th day of August, 2013.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE